IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRENDA DICKSON,

    Plaintiff,

vs.                                                          Civ. No. 01-192 WWD/LFG ACE

CITY OF ALBUQUERQUE, JOHN DANTIS,
individually and in his official capacity as
director of the Bernalillo County Detention
Center; JACK YARMOLA, individually and
in his official capacity as supervisor of the
Bernalillo County Detention Center; THE
COUNTY OF BERNALILLO, through its
BOARD OF COMMISSIONERS OF THE
COUNTY OF BERNALILLO,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant City of Albuquerque's Motion for Summary Judgment [docket no. 59] filed March 21, 2002. I have reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, the motion for summary judgment should be denied.

## STANDARD FOR SUMMARY JUDGMENT.

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F. 3d 1522, 1527

1

(10th Cir. 1995) (quoting Fed. R. Civ. P. 56( c)). All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party. Id. On a motion for summary judgment, the issue is not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U. S. 242, 252 (1986). Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question. <u>Walker v. Nations Bank of Florida</u>, 53 F. 3d 1548, 1555 (11th Cir. 1995).

The crucial facts are derived mainly from the depositions of Brenda Dickson, Jack Yarmola, Larry Cook, Erscell Griffin, John Waters, and Tony Flores; and these facts along with other background facts are contained in the Defendant City of Albuquerque's recitation of the undisputed facts of the case.

<u>UNDISPUTED FACTS.</u>

Viewed in the light most favorable to the Plaintiff, a brief summary of the facts presented to the Court are as follows, to wit:

In the Summer of 1999, Plaintiff, a corrections Lieutenant, was transferred to the Bernalillo County Detention Center Satellite facility where she worked until late 1999, when she was temporarily reassigned to the Westside facility because she did not want to serve under her supervisor, Jack Yarmola, at the satellite facility  Yarmola, a civilian employee, had the same supervisory position in the jail hierarchy as a corrections officer Captain; and Plaintiff assisted Yarmola in overseeing the Albuquerque Clean Team ("ACT") at the satellite. Most of the inmates on the ACT had been convicted of misdemeanors, although some may have been felons.

2

The inmates had a practice of dousing with water any of their number (i.e., *inmates*), who was about to be released. Inexplicably, Yarmola instructed the inmates to restrain and douse Plaintiff, a corrections Lieutenant and not an inmate, on several occasions. Although Plaintiff was not physically injured or actually doused on these occasions, she was traumatized emotionally, and she was apprehensive about being visually exposed if she were doused with water. In August 1999, Plaintiff talked to Jack Yarmola about these incidents of attempted dousing, and Yarmola assured her that it would not happen again. There were no further attempts to douse Plaintiff.

Yarmola changed his outer clothing from time to time in the approximately 12' x 14' office he shared with Plaintiff while Plaintiff was present. He changed his pants in the office approximately three times, while keeping his knee length underwear on. Plaintiff did not complain about this at the time; however, she reported these incidents and the attempted dousing incidents to the management personnel at BCDC in October 1999, when she sent a memorandum concerning both of these matters and other matters to Major Larry Cook. A lengthy investigation was undertaken after the memorandum to Major Cook was received; and, ultimately, Yarmola received a 60 day suspension for his misconduct. When she submitted her resignation in December, 1999, Plaintiff was encouraged to stay by Bernalillo County Detention Center Director Dantis, Deputy Director Sisneros, and Major Cook. Plaintiff had a good professional relationship with her supervisors on the West Side. Plaintiff contends that the BCDC has failed to take care of her employee complaint promptly in violation if its contract with her; however, no specific provision of the contract has been pointed out by Plaintiff.. Plaintiff was never faced with the situation of resigning or being fired.

DISCUSSION.

In the factual situation presented, there is no direct evidence that the reprehensible conduct by Mr. Yarmola was gender related; however, the circumstances are such that a reasonable jury could find that Yarmola's activities were indeed gender related. See Land v. Midwest Office Tech., Inc., 114 F.Supp.2d 1121, 1136 (D.Kan. 2000) (citations omitted) ("All instances of harassment need not be stamped with signs of overt discrimination to be relevant under Title VII if they are part of a course of conduct which is tied to evidence of discriminatory animus."). Although Plaintiff could give no reason to believe that Yarmola attempted to have her doused because she was a woman, I find that the circumstances of these incidents, including the superior-inferior employment relationship of Yarmola and the Plaintiff, are such as to present a question of fact which should be decided by a jury in the context of all the evidence. When Plaintiff complained about the dousing attempts, they were stopped by Yarmola. The fact that Yarmola's changing clothes took place in Plaintiff's presence may not necessarily make the act gender related; however, it does present a question of fact as to whether the conduct would be considered hostile toward a woman in Plaintiff's situation. See id. (explaining that a hostile environment is determined only by looking at all the circumstances). The argument that Plaintiff did not complain to Yarmola can be viewed as evidence of the fact that Plaintiff was intimidated by Yarmola. which certainly seems as likely as her not being offended by the conduct.

The City acted promptly in undertaking an investigation which, when completed, resulted in a 60 day suspension for Yarmola. Thus, assuming *arguendo* that Plaintiff was subjected to a hostile work environment, the City acted promptly when it was notified of Yarmola's activities. However, the City is not entitled to summary judgment on the hostile work environment claim if,

in acting promptly, it failed to exercise reasonable care to prevent and correct the harassing behavior. See Faragher v. Boca Raton, 524 U.S. 775, 807 (1998). Such a determination is a peculiarly factual matter often dependent on the totality of circumstances being considered by a jury; accordingly, I find that disposing of the hostile environment claim against the city summarily would not be the preferred course.

At the time of her resignation Plaintiff had been transferred away from the offending Yarmola. She got along well with her co-workers at the Westside facility, and all of her supervisors tried to persuade her not to resign. At the time of her resignation there is no showing that Plaintiff's work conditions at the Westside facility were so intolerable as to allow her resignation to be treated as a constructive discharge; however, Plaintiff was faced with the "Hobson's choice" of being sent back to serve under Yarmola or continuing the long commute imposed on her by being transferred to the West facility. Whether Plaintiff's termination was a constructive discharge is a question of fact dependant upon the totality of circumstances and the question is better addressed by a jury than in a summary determination.

Defendant also moves for summary judgment on Plaintiff's breach of contract claim, contending that Plaintiff fails to point to any contractual provision that the City violated. In her Response, Plaintiff asserts that an "employee Code of Conduct" allegedly "created an implied contractual expectation," Pl. Dickson's Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") [Doc. 68] at 9, that she "was entitled to be safe," First Supp. Aff of Pl. Dickson, Ex. 1 to Pl.'s Resp. Specifically, Plaintiff highlights the following language contained in the "Code of Conduct" under the heading "Safety":

> Employees are responsible for performing assigned duties in the

> safest possible manner . . . and to report unsafe . . . conditions to those in responsible charge.
>
> Because human dignity and the personal safety of each employee is of the utmost importance, dangerous practical jokes, "horseplay," and roughhouse activities are prohibited on City property.

Ex. 2 attached to Pl.'s Resp.[1]

In its Reply, Defendant argues that the "policy" cited by Plaintiff is not contractual in nature and does not promise Plaintiff anything. Defendant also argues that the document attached as Exhibit 2 to Plaintiff's Response ("Code of Conduct") should be disregarded because it is not certified or dated. The Court agrees that the document probably fails to comply with the authentication requirements set forth in Rule 56(e) for purposes of summary judgment. See e.g., Ortiz v. Wingard, 173 F.Supp.2d 1155, 1163 (D.N.M. 2001). Nevertheless, the Court finds that even assuming its authenticity, the document is insufficient evidence to support Plaintiff's breach of implied contract claim.

The document that Plaintiff refers to as an employee "Code of Conduct" lacks the "specific contractual terms which might evidence the intent to form a contract." Sanchez v. The New Mexican, 106 N.M. 76, 78, 738 P.2d 1321, 1324 (1987). The language here is not promissory in nature, but rather, advises employees of their responsibilities and duties and requires them to refrain from engaging in certain conduct.[2] Moreover, even assuming that the

---

[1] Exhibit 2, provided by Plaintiff, is a one page, untitled document divided into six categories: (1) Conflict of Interest, (2) Safety, (3) Work Hours, (4) Political Activity, (5) Employment of Relatives, and (6) Community Activities.

[2] Language in other portions of the "Code of Conduct" further indicates that the purpose of the document is to inform employees of rules and/or regulations with which they should comply: "Employees shall comply", "Employees are expected", "Employees . . . shall not . . .", "employees are encouraged . . .". Ex. 2, Pl.'s Resp.

6

"Code of Conduct" is promissory, the language is not sufficiently definite, specific, or explicit so as to create a reasonable expectation that the employer has guaranteed or assured its employees that they will "be safe" from such conduct. An implied contract cannot exist where "the alleged promise by the employer [is] not sufficiently explicit." Garrity v. Overland Sheepskin Co., 121 N.M. 710, 713, 917 P.2d 1382, 1385 (1996). For these reasons, Defendant's motion for summary judgment should be granted in its favor on Plaintiff's breach of contract claim.

**WHEREFORE,**

**IT IS ORDERED** that Defendant City of Albuquerque's Motion for Summary Judgment on Plaintiff's breach of contract claim be, and it is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant City of Albuquerque's Motion for Summary Judgment is in all other particulars **DENIED.**

_____
UNITED STATES MAGISTRATE JUDGE